60 F.3d 837
 6 NDLR P 396
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Mary C. DRATZ, Plaintiff-Appellant,
v.
Glen D. JOHNSON, Speaker, Oklahoma House of Representatives,
in his official and individual capacities,
Defendant-Appellee.
 No. 94-6056.
 United States Court of Appeals, Tenth Circuit.
 July 11, 1995.
 
 Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Plaintiff Mary C. Dratz appeals the district court's order entering summary judgment in favor of defendant Glen D. Johnson on plaintiff's discrimination claims against him under 504 of the Rehabilitation Act, 29 U.S.C. 504, and 42 U.S.C.1983.[2] We have jurisdiction under 28 U.S.C. 1291.
 
 
 2
 Plaintiff, an attorney employed by the Oklahoma House of Representatives, alleged that she was discriminated against on the basis of her physical handicap in that, following a decision made in August 1988, she was paid less than Kathy Muckala, a nondisabled attorney who had less seniority than plaintiff and who, plaintiff contended, was no better qualified for the position than she was. The only claims at issue on appeal are those against defendant in his official capacity as Speaker of the House, in which capacity he apparently was responsible for approving legal staff salaries. The district court ruled against plaintiff on both her claims, after determining that she had failed to produce evidence to show that defendant's proffered legitimate reasons for his action were untrue and, therefore, no reasonable juror could conclude, based on the evidence, that the salary differential about which plaintiff complained resulted from handicap discrimination.
 
 
 3
 We review the district court's grant of summary judgment de novo. Johns v. Stewart, (No. 94-4161), 1995 WL 365142, at * 8 (10th Cir. Jun. 20, 1995). Based upon our review, we affirm the entry of summary judgment in favor of defendant.
 
 
 4
 To state a claim under 504 of the Rehabilitation Act, " 'plaintiff must prove (1) that [s]he is a "handicapped individual" under the Act, (2) that [s]he is "otherwise qualified" for the [benefit] sought, (3) that [s]he was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance.' " Johnson ex rel. Johnson v. Thompson, 971 F.2d 1487, 1492 (10th Cir.1992)(quoting Strathie v. Department of Transp., 716 F.2d 227, 230 (3d Cir.1983) (citation omitted))(alteration in original), cert. denied, 113 S.Ct. 1255 (1993). To establish a 1983 claim for violation of her right to equal protection, plaintiff had to show that the relevant decisionmakers were motivated, at least in part, by a discriminatory intent or purpose. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977).
 
 
 5
 The evidence showed that the salary discrepancy about which plaintiff complains began in 1988, when the then Director of Research for the House of Representatives, George Moser, received authorization from the then Speaker of the House, Jim Baker, to give raises to the legal staff. At that time, plaintiff and Ms. Muckala were both in an Attorney II position and were earning the same salary.
 
 
 6
 Mr. Moser and Scott Emerson, the Director of the House Legal Division, determined how large a raise each legal staff member should receive based on both the last formal performance evaluations, conducted in 1986, and their informal opinions of each employee's subsequent performance. Plaintiff does not dispute that her 1986 overall performance rating was not as high as Ms. Muckala's rating for the same time period. The Speaker ultimately approved a raise of $256.16 a month for plaintiff and a raise of $461.66 a month for Ms. Muckala. Although plaintiff later received performance evaluations as high as Ms. Muckala's, the salary differential that began in 1988 continued thereafter because all future raises the two attorneys received--whether authorized by the Speaker or by the full legislature--were either in an identical dollar amount or represented approximately the same percentage of their respective salaries.
 
 
 7
 In his motion for summary judgment, defendant disclaimed any reliance on plaintiff's handicap in the salary decisions at issue. Defendant submitted affidavits showing that the decision to give Ms. Muckala a larger raise than plaintiff in 1988 was based on the quality of the attorneys' respective job performances and was not influenced by plaintiff's handicap. Defendant's evidence also showed that plaintiff's handicap was not considered in determining any future raises. Plaintiff, in turn, presented evidence that she contended showed that the reason defendant advanced for the difference in salaries between her and Ms. Muckala was not true. She argued that the reason for the salaries given by defendant was merely a pretext for handicap discrimination.
 
 
 8
 Because 504 of the Rehabilitation Act does not prohibit an employer from considering an employee's handicap when making an employment decision, many 504 cases do not lend themselves to the type of burden-shifting analysis developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), for discrimination suits under Title VII of the Civil Rights Act of 1964. In cases where the employer admits that it relied, in whole or in part, on the plaintiff's handicap, and instead contends that it cannot reasonably accommodate the handicap, the purpose of the McDonnell Douglas burden-shifting analysis, which is to determine the employer's subjective intent in making the challenged employment decision, will have been met from the outset. See, e.g., White v. York Int'l Corp., 45 F.3d 357, 361 n. 6 (10th Cir.1995).
 
 
 9
 In such accommodation cases, "[t]he pivotal issue is not whether the handicap was considered but whether under all of the circumstances it provides a reasonable basis for finding the plaintiff not to be qualified or not as well qualified as other applicants." Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir.1981); see also Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1385-86 (10th Cir.1981)("[T]he issue is not merely whether the handicap played a prominent part in [the plaintiff's] rejection, as in cases dealing with alleged discrimination on the basis of race, for example (where race is never expressly mentioned as a consideration), the issue is whether rejecting [the plaintiff] after expressly weighing the implication of his handicap was justified.").
 
 
 10
 Rehabilitation Act cases may, however, fall into a second category, which consists of straightforward discrimination cases that are virtually identical to Title VII cases. In this second category of cases, the employer disclaims any reliance on the plaintiff's protected status in making the challenged employment decision. The plaintiff, in turn, contends that the reasons advanced by the employer for the employment decision are not true and are merely a cover-up for the true reason, which is illegal discrimination.
 
 
 11
 Several circuits have acknowledged that the burden-shifting analysis of McDonnell Douglas and its progeny is quite suitable for this second category of discrimination cases. See, e.g., Barth v. Gelb, 2 F.3d 1180, 1186 (D.C.Cir.1993)(noting that category two Rehabilitation Act cases "involve[ ] the sort of inquiry into subjective facts--the [employer's] true motivation--that the Burdine three-step approach was designed to address"), cert. denied, 114 S.Ct. 1538 (1994); Teahan v. Metro-North Commuter R.R., 951 F.2d 511, 514 (2d Cir.1991)(holding that McDonnell Douglas analysis is appropriate for Rehabilitation Act cases that fall into the second category), cert. denied, 113 S.Ct. 54 (1992); Prewitt v. United States Postal Serv., 662 F.2d 292, 305 n. 19 (5th Cir.1981)(concluding that Title VII jurisprudence applies to cases involving either "intentional social-bias discrimination against handicapped persons" or "disparate impact handicap discrimination").
 
 
 12
 In the past, we have rejected application of the McDonnell Douglas burden-shifting analysis in a Rehabilitation Act case that combined elements of both the first and second categories of cases. See Pushkin, 658 F.2d at 1385, 1386, 1387-89 (rejecting use of McDonnell Douglas analysis in case where university, while not expressly relying on plaintiff's handicap, articulated reasons for plaintiff's rejection that actually encompassed consideration of plaintiff's handicap). We have not, however, addressed its use in a Rehabilitation Act case, such as the present one, that falls squarely within the second category of straightforward discrimination cases. We take the opportunity to do so now, and join our sister circuits in holding that the burden-shifting analysis used in Title VII cases is appropriate in Rehabilitation Act cases in which the defendant disclaims all reliance on the plaintiff's handicap in taking the challenged action and the plaintiff alleges that the defendant's proffered reason for the action is merely a pretext for handicap discrimination.
 
 
 13
 Pursuant to this burden-shifting analysis, even "[i]f a plaintiff successfully proves that the defendant's reasons are not worthy of credence, the plaintiff must [ultimately] still prove that the true motive for the employment decision violates [the statute]." Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir.1993)(reviewing district court's finding of intentional discrimination on Title VII claims after bench trial). It clearly follows that a plaintiff cannot survive a motion for summary judgment if he or she cannot even show that the defendant's proffered legitimate reason is untrue.
 
 
 14
 While the evidence showed that plaintiff is generally an excellent employee, her evidence did not relate specifically to the period between 1986 and 1988, when the allegedly discriminatory decisions were made. Therefore, plaintiff's evidence, even if credited, fails to demonstrate that defendant was motivated to give plaintiff a smaller raise than Ms. Muckala for any reason other than the nondiscriminatory reason he suggested--i.e., plaintiff's lower performance appraisal.
 
 
 15
 To prevail on her Rehabilitation Act claim, plaintiff had to establish that the challenged employment action "result[ed] from the handicap and from the handicap alone," Johnson ex rel. Johnson, 971 F.2d at 1493. To prevail on her 1983 claim, plaintiff had to establish that handicap discrimination was at least a motivating factor in the challenged decisions. The evidence, however, failed to create a material issue of fact as to whether the challenged decisions were even motivated in part by handicap discrimination. The district court, therefore, properly entered summary judgment against plaintiff on both her Rehabilitation Act and 1983 claims.
 
 
 16
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument